■ Jason T. Ostrander, Appellant, v Tracy C. McCain, Respondent. (And Another Related Proceeding.) [891 NYS2d 544]—

Peters, J.P.

Petitioner (hereinafter the father) and respondent (hereinafter the mother), who never married, are the parents of a son (born in 2005). They lived together from 2000 until January 2007, when the mother left the father for a high school senior. Thereafter, their son resided with the mother and had visitation with the father at least every other weekend and on Wednesday evenings. This informal arrangement continued until early 2008, when the father, upon learning that the mother intended to move with the child approximately 178 miles away to the Village of Fairport, Monroe County, filed a petition seeking joint

custody of the child. Unbeknownst to the father, the mother had already relocated to Fairport with the child, yet continued to meet the father at her former apartment to exchange the child for visitation. Following the initial court appearance, at which time the father first learned that the mother had already moved, a temporary order was issued awarding the parties joint custody with physical custody of the child alternating on a weekly basis. Shortly thereafter, the father filed an amended petition seeking primary physical custody of the child and the mother petitioned for custody and permission to relocate.

Following a fact-finding hearing, Family Court granted the parties joint legal custody, awarded physical custody of the child to the mother, and permitted the mother to relocate with the child to Fairport. The court also awarded the father nine consecutive days of visitation each month and such additional time as the parties may agree, with the requirement that the parties exchange the child in the City of Syracuse, Onondaga County. This appeal by the father ensued.

We first note that, there having been no prior award of custody, strict application of the factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]) is not required (*see Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1255 [2009]; *Furman v Furman*, 298 AD2d 627, 628-629 [2002], *lv dismissed and denied* 99 NY2d 575 [2003]). However, "a parent's 'decision to reside in a distant locale [is] "a very important factor" among the constellation of factors [to be] considered in arriving at [a] best interests determination, [particularly where] there [is] evidence that it would detrimentally affect' the other parent's relationship with the child[ ]'" and the child's relationship with his or her extended family (*Matter of Streid v Streid*, 46 AD3d 1155, 1156 [2007], quoting *Matter of Siler v Siler*, 293 AD2d 826, 828 [2002], *appeal dismissed* 98 NY2d 691 [2002]; *see Furman v Furman*, 298 AD2d at 629-630; *Osborne v Osborne*, 266 AD2d 765, 767-768 [1999]). Here, the father does not challenge Family Court's decision to award physical custody of the child to the mother. Rather, he argues only that it is not in the child's best interests to permit the mother to relocate with the child to Fairport, a position also advanced by the Law Guardian both at the hearing and on appeal. Upon our review of the record, we agree.

The evidence adduced at the hearing clearly demonstrates that an award of physical custody to the mother in Fairport will significantly impact the child's access to and ability to foster a meaningful relationship with his father and extended family. As Family Court found, the father has always been very active in

the child's upbringing, both while the parties resided together and following the dissolution of their relationship. The father enjoyed extensive parenting time with the child under the parties' informal arrangement and pursuant to the temporary order of custody. Although he also regularly exercised periods of visitation beyond those agreed upon by the parties, such liberal visitation is not now practical due to the distance between the parties. Furthermore, most of the child's extended family (all of the father's and much of the mother's) reside in Broome County, including grandparents, aunts, uncles and cousins, with whom the child has regular contact. Only the mother's father, stepmother and brother reside in the Fairport area. Notably, even as early as the fact-finding hearing, the three-hour car ride was proving to be very burdensome on the child. In addition, since the father lacks a reliable vehicle and the mother does not own a car, the ability to facilitate regular and meaningful visitation with the father is bound to be fraught with difficulties.

Moreover, although Family Court—recognizing the extensive visitation that the father has enjoyed and the distance between the parties—provided the father with nine consecutive days of visitation each month, this schedule will almost certainly interfere with the ability to place the child in a preschool program, which both parties expressed a desire to do this year. More importantly, such visitation schedule will not be feasible when the child enters elementary school next year, and will thus serve to further deprive the father of meaningful access to his son. When asked how visitation would work after the child begins kindergarten, the mother stated that she "really ha[s]n't thought about it that far in advance." Indeed, it is apparent that the mother has given little thought to the effect of the move on the child.

Nor would the mother's move enhance the child's life "economically, emotionally [or] educationally" (*Furman v Furman*, 298 AD2d at 629 [citation omitted]; *accord Matter of Streid v Streid*, 46 AD3d at 1157; *compare Malcolm v Jurow-Malcolm*, 63 AD3d at 1257). Although there were vague references to the better quality of life and increased opportunities in Monroe County, the mother's assertions in this regard were either unsubstantiated or contradicted by her own testimony. She remained employed by the same employer and earned the same hourly wage as she had while living in Broome County. While the mother's primary reason for moving was that she could live rent-free in Fairport in a three-bedroom home owned by her stepmother, we fail to find any real stability in this living arrangement. The mother is not named on the deed, does not

have a written lease, and agreed that she has been given no assurances that she will be able to reside there indefinitely.* In our view, this single immediate benefit of the relocation is heavily outweighed by the detrimental effects that such move will have on the child (*see Matter of Storch v Storch*, 282 AD2d 845, 847 [2001], *lv denied* 96 NY2d 718 [2001]; *Matter of Roseboom v Carreras*, 254 AD2d 548, 550 [1998]).

Under the totality of the circumstances herein, we find that Family Court's decision that the child's best interests will be served by permitting the mother to relocate to Fairport lacks a sound and substantial basis in the record. Inasmuch as our authority in custody matters is as broad as that of Family Court (*see Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]; *Matter of Welch v Welch*, 39 AD3d 910, 910 [2007], *lv dismissed* 9 NY3d 988 [2007]), we conclude that it is in the best interests of the child to award physical custody to the mother upon the condition that she move within a 50-mile radius of the Village of Endicott, Broome County, where the father resides (*see e.g. Matter of Streid v Streid*, 46 AD3d at 1157; *Furman v Furman*, 298 AD2d at 630; *Matter of Siler v Siler*, 293 AD2d at 828).

Lahtinen, Malone Jr., Kavanagh and Stein, JJ., concur. Ordered that the order is modified, on the facts, without costs, by reversing so much thereof as allowed respondent to relocate with the child to the Village of Fairport, Monroe County; petition dismissed to that extent, respondent is awarded primary physical custody of the child conditioned upon her relocating her residence to within 50 miles of the Village of Endicott, Broome County, and matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

---

* Indeed, the mother acknowledged that her stepmother could at any time and for any reason require her to leave.